| | |
|---|---|
| VETS-HELP.ORG-NC, INC., and CRAIG NORTHACKER, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) **ORDER** ) |
| JOSH STEIN,[1] | ) ) |
| Defendant. | ) ) ) |

     **THIS MATTER IS BEFORE THE COURT** on Defendant Josh Stein's Motion to Dismiss (Doc. 6) and Plaintiff Craig Northacker's Motion to Proceed *in forma pauperis* (Doc. 2). The Court filed a *Roseboro*[2] order notifying Plaintiff of his right to file a response to Defendant's Motion to Dismiss, (Doc. 7), and the Plaintiff timely filed a response (Doc. 8). Stein has not filed a reply to Plaintiff's response and the time to do so has elapsed. Accordingly, Plaintiff's Motion to Proceed *in forma pauperis* and the Defendant's Motion to Dismiss are now ripe for disposition. For the reasons stated below, Plaintiff's Motion to Proceed *in forma pauperis* (Doc. 2) is **DENIED**, Defendant's Motion to Dismiss (Doc. 6) is **GRANTED**, and Plaintiff's Complaint (Doc. 1) is **DISMISSED**.

## I.    BACKGROUND

     Plaintiff Craig Northacker, proceeding *pro se*, commenced this action by filing a complaint that raises two claims under 42 U.S.C. § 1983. (Doc. 1). In his complaint, Plaintiff Northacker claims he is a victim of two frauds and that he repeatedly attempted to file felony theft and unlawful

---

[1] At the time of the complaint, Roy Cooper was the elected North Carolina Attorney General. The Defendant in this case is now Josh Stein, the current North Carolina Attorney General. *See* Fed. R. Civ. P. 25(d).

[2] *See Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

conversion charges, but the Attorney General, Roy Cooper, never pursued criminal charges against the offenders. (Doc. 1 at 2). Plaintiff alleges Cooper, serving in his official capacity as North Carolina Attorney General, instead covered up the fraud to gain a political benefit. *Id.* at 2. Based on these allegations, Plaintiff's Complaint raises two separate claims based on the alleged denial of his First Amendment right to petition the government for a redress of grievances. (*See* Doc. 1 at 2–5 (first claim), 5–11 (second claim)).

Plaintiff's first claim relates to his creation and operation of Vets-Help.org-NC, Inc ("Vets-Help"). Vets-Help is a non-profit corporation designed to help veterans and their families integrate back into their respective communities following service abroad. *Id.* at 2. In 2011, Plaintiff alleges he borrowed $150,000 and collaborated with a business partner in order to set up Vets-Help in North Carolina. *Id.* at 3. Later, Plaintiff completed a background check on his business partner and discovered thirty aliases associated with the partner's name. *Id.* Plaintiff alleges his business partner engaged in fraudulent activities that harmed him and Vets-Help. (*See generally id.* at 2–5).

Plaintiff presented his concerns regarding his business partner to the Rowan County Sheriff, the Rowan County Magistrate, and the Rowan County District Attorney. *Id.* at 4. However, each Rowan County official refused to accept his complaint. *Id.* Plaintiff then sent a letter to Cooper detailing the wrongs against him and Vets-Help; however, Cooper did not respond to Plaintiff's letter and instead focused on his 2012 election campaign.[3] *Id* at 5. Plaintiff alleges that the refusal of Cooper to take action on his complaint by bringing charges against his business partner amounts to a violation of his First Amendment right to petition the government for a redress of grievances. (*See generally id.* at 2–5).

---

[3] While Plaintiff asserts Cooper was focusing on his campaign for North Carolina Governor, the Court notes that, in 2012, Cooper ran for Attorney General, not for Governor. He ran successfully for Governor is 2016.

Plaintiff Northacker's second claim relates to his attempted purchase of the Rockingham Speedway on behalf of Vets-Help. (*See generally id.* at 5–11). In 2014, Plaintiff hired counsel and sought to purchase the Rockingham Speedway. *Id.* at 6. Plaintiff alleges he obtained a court order allowing him to purchase a bank note for the Rockingham Speedway; however, the bank never presented Plaintiff with the option to purchase the note. *Id.* Plaintiff began investigating the bank and claims to have discovered that the bank had too many non-performing loans against the required capital and was close to violating federal standards. *Id.*

Plaintiff then petitioned Cooper regarding Plaintiff's discoveries about the bank. *Id.* Cooper forwarded Plaintiff's complaint to the Banking Commissioner and the Banking Commissioner sent a letter to the bank.[4] *Id.* Plaintiff alleges the bank interfered with his attempted purchase of Rockingham Speedway by raising the purchase price from $2.7 million to $2.95 million, and he asserts the increase of the purchase price amounts to bank fraud. *Id.* at 8–9. Plaintiff contacted the Richmond County Attorney and the Richmond County Sheriff, and then petitioned Cooper again to review the alleged facts that Plaintiff believed demonstrated fraud. *Id.* at 9–10.

After petitioning Cooper, Plaintiff did not immediately receive any response. *Id.* Approximately three months after petitioning Cooper, Plaintiff reached out to the Attorney General's office to check on the status of his petition. *Id.* Two days later, the Attorney General's office emailed Plaintiff explaining they received his petition, but that the Attorney General's office had decided not to pursue the case because the alleged bank fraud "did not impact a larger group of constituents." *Id.* at 10.

---

[4] While Plaintiff continues to mention a bank he was in business with and later alleges the bank was participating in fraudulent activity, Plaintiff's Complaint fails to identify the bank by name. (*See* Doc. 1 at 5-11).

Plaintiff contends Cooper buried his petition and, in doing so, violated his First Amendment right to petition the government for a redress of grievances. *Id*. Plaintiff further alleges that by not pursuing an investigation, Cooper protected his electoral base in Richmond County and received the benefit of their votes in the 2016 North Carolina Gubernatorial election. *Id*.

Plaintiff seeks monetary compensation in the form of "restitution of losses, nontaxable compensation for emotional and physical duress, loss of profits and funding opportunities, penalties." *Id*. at 13. Plaintiff also seeks sanctions against Cooper, in his capacity as Attorney General, and prospective relief in the form of an "[o]rder to force police compliance with the First Amendment and other similar laws of the land." *Id*.

Plaintiff filed a Motion to Proceed *in forma pauperis*. (Doc. 2). While his Motion to Proceed *in forma pauperis* remained pending before this Court, Plaintiff attempted to complete service of process on Cooper. (Doc. 5-1); *but see* 28 U.S.C. § 1915(d) ("The officers of the Court shall issue and serve all process and perform all duties in [cases proceeding *in forma pauperis*]."). Defendant moved to dismiss Northacker's complaint, citing Fed. R. Civ. P. 12(b)(1), (b)(2), (b)(6) and Fed. R. Civ. P. 8, and raising defenses including sovereign immunity and failure to state a claim upon which relief may be granted. (Doc. 6). In response, Plaintiff acknowledges defendant's arguments but neither provides salient counterarguments nor additional factual allegations. [5] (Doc. 8).

---

[5] In his response, Plaintiff seems to be confused when reading Defendant's Motion to Dismiss (Doc. 6) and writes that he cannot find Fed. R. Civ. P. 12(b)(8). (Doc. 8 at 2). Although Plaintiff is correct that there is no Fed. R. Civ. P. 12(b)(8), Defendant cited Fed. R. Civ. P. 8, which sets out the pleading standard for civil complaints.

## II.    DISCUSSION

A.    <u>Standard of Review</u>[6]

Rule 12(b)(6) provides for the dismissal of a claim based upon a plaintiff's "failure to state a claim upon which relief can be granted."[7]  Fed. R. Civ. P. 12(b)(6).  A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  In evaluating a motion to dismiss, a court "must accept as true all well-pleaded allegations" and must construe the complaint's factual allegations "in the light most favorable to the plaintiff."  *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994).  A court, however, "need not accept the legal conclusions drawn from the facts," nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments."  *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quotation marks omitted).

While Fed. R. Civ. P. 8(a)(2) does not require "detailed factual allegations," a complaint must offer more than "naked assertion[s]" and unadorned "labels and conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In order to survive a Rule 12(b)(6) motion to dismiss, the facts alleged must "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  Requiring plausibility "does not impose a probability requirement at the pleading stage," *id.* at 556, but does demand more than a "sheer possibility that a defendant has acted unlawfully," *Iqbal*, 556 U.S. at

---

[6] This Court's review under Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915(e)(2)(B) is dispositive as to Defendant's Motion to Dismiss and the viability of Plaintiff's Complaint.

[7] In the Motion to Dismiss Defendant does not acknowledge Plaintiff's first claim for relief, so this Court reads the motion to dismiss as only pertaining to the second claim for relief and will review the first claim for relief under 28 U.S.C. § 1915.  Review under § 1915 follows the same analysis as review under 12(b)(6).  *Thomas v. The Salvation Army S. Territory*, 841 F.3d  632, 637 (4th Cir. 2016); *Neitzke v. Williams*, 490 U.S. 319, 328 (1989) ("To the extent that a complaint filed *in forma pauperis* which fails to state a claim lacks even an arguable basis in law, Rule 12(b)(6) and § 1915[] both counsel dismissal.").

662.  Ultimately, a claim is facially plausible when the factual content allows for the reasonable inference that the defendant is liable for the misconduct alleged.  *Iqbal*, 556 U.S. at 678.

In applying the 12(b)(6) standard, the Supreme Court has reiterated that "[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted).  However, the United States Court of Appeals for the Fourth Circuit has "not read *Erickson* to undermine *Twombly*'s requirement that a pleading contain more than labels and conclusions[.]"  *Giarratano*, 521 F.3d at 304 n.5 (internal quotations omitted) (applying *Twombly* standard in affirming dismissal of *pro se* complaint*); accord Atherton v. Dist. of Columbia Off. of Mayor*, 567 F.3d 672, 681–82 (D.C. Cir. 2009) ("A *pro se* complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.'  But even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (quoting *Erickson*, 551 U.S. at 94; *Iqbal*, 556 U.S. at 679)).  The rules governing the generous construction of *pro se* pleadings "do[] not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based."  *Ashby v. City of Charlotte*, 121 F. Supp. 3d 560, 562 (W.D.N.C. 2015).

B.      Second Claim: Rockingham Speedway[8]

In the present case Cooper was sued in his official capacity as the North Carolina Attorney General for not pursing legal action in light of the alleged fraud by the bank.  (*See* Doc. 1 at 5–11). The Eleventh Amendment of the United States Constitution bars suits in federal court against the

---

[8] The Court discusses Plaintiff's second claim first because it was the only claim mentioned in Defendant's Memorandum in support of its Motion to Dismiss.  (*See* Doc. 6).

State.[9] *Alden v. Maine*, 527 U.S. 706, 729 (1999). "[A]n unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). Immunity extends not only to the State, but also to "arm[s] of the State[,]" including state officers. *Mt. Health City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977). While acting in their official capacity, state officers are entitled to Eleventh Amendment immunity because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," and "[a]s such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

The Eleventh Amendment forbids actions against state officials for monetary relief for past wrongs. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Because a state official acting in his official capacity is an embodiment of the state, "when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Nivens v. Gilchrist*, 444 F.3d 237, 249–50 (4th Cir. 2006). While a federal court's remedial power does not allow it to grant a reward for a past transgression under the Eleventh Amendment, a court may grant prospective injunctive relief. *See Edelman*, 415 U.S. at 677 (citing *Ex Parte Young*, 209 U.S. 123 (1908)).

Here, Cooper was the sitting Attorney General of the state of North Carolina, and Plaintiff brings suit against Cooper only in his official capacity. (Doc. 1 at 1). The Attorney General is a state official, and a state official acting in his official capacity in essence represents the state. *Will*,

---

[9] The Eleventh Amendment reads: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

491 U.S. at 71. Sovereign immunity prevents a litigant from suing a state for monetary relief for a past wrong. *Graham*, 473 U.S. at 169. By extension, sovereign immunity also prevents a litigant from suing a state official, in his official capacity, for monetary relief for a past wrong. *Nivens*, 444 F.3d at 249–50. Because Cooper was sued in his official capacity as Attorney General, Plaintiff is barred from recovery due to sovereign immunity under the Eleventh Amendment. However, sovereign immunity does not bar Plaintiff's request for prospective relief. *Nivens*, 444 F.3d at 249–50; *Edelman*, 415 U.S. at 677. Accordingly, the Court proceeds by considering whether the prospective relief portion of Plaintiff's second claim states a claim upon which relief can be granted for purposes of Fed. R. Civ. P. 12(b)(6).

Under 42 U.S.C. § 1983, a Plaintiff can only prevail if he proves both "a deprivation of a federally protected right secured by the constitution and laws of the United States" and that a "state action [was] taken under color of the law." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 930 (1982). A right to compel a public official to prosecute another individual does not exist, ergo failure to prosecute does not violate the First Amendment right to petition the government for a redress of grievances. *See Langworthy v. Dean*, 37 F.Supp.2d 417, 422 (D. Md. 1998); *Doe v. Mayor and City Council of Pocomoke City*, 745 F. Supp. 1137, 1139 (D. Md. 1990) ("A public official charged with the duty to investigate or prosecute a crime does not owe that duty to any one member of the public. Therefore, no one member of the public has a right to compel a public official to act."); *see Beverly v. State*, 707 A.2d 91, 93 (Md. 1998) ("It is well-settled that the determination of which criminal charges, if any, to bring is a matter of prosecutorial discretion.").

Here, Plaintiff does not provide a causal link between Cooper and a deprivation of Plaintiff's federally protected rights. *See Langworthy*, 37 F.Supp.2d at 422–24; *Doe*, 745 F. Supp. at 1139; *Beverly*, 707 A.2d at 93. Plaintiff alleges he was wronged because Cooper refused to

pursue an action against the bank. (Doc. 1 at 2). Plaintiff is not entitled to relief because the decision of the Office of the Attorney General not to pursue an action based on Northacker's petition does not constitute a First Amendment violation. *See Langworthy*, 37 F.Supp.2d at 422–24; *Doe*, 745 F. Supp. at 1139; *Beverly*, 707 A.2d at 93. Furthermore, Plaintiff, per the allegations in his complaint, did petition the Office of the Attorney General regarding the alleged bank fraud and the Office of the Attorney General accepted and processed his petition. (*See* Doc. 1 at 10 (Plaintiff alleging that he petitioned the Attorney General's office respecting the alleged bank fraud relative to his attempted purchase of the Rockingham Speedway)). While Plaintiff may have been displeased with the length of time it took to receive an answer and the Attorney General Office's decision not to pursue an action against the bank, nothing about these allegations rises to the level of a First Amendment violation.

Accordingly, because principles of sovereign immunity bar Plaintiff's claim for money damages and because the allegations pled in support of Plaintiff's second 42 U.S.C. § 1983 claim do not amount to a violation of the First Amendment, Defendant's Motion to Dismiss (Doc. 5) is **GRANTED**. Consequently, the second claim in Plaintiff's Complaint (Doc. 1 at 5-11) is **DISMISSED WITH PREJUDICE**.

C.      First Claim: Fraud by Business Partner

Plaintiff's first claim for relief is against Cooper, in his official capacity, based on Cooper's failure to pursue criminal charges in regards to Plaintiff's business partner, whom Plaintiff alleges was involved in fraudulent activities. Since Defendant did not acknowledge this claim in his Memorandum in support of his Motion to Dismiss (*See* Doc. 6), this Court reviews Plaintiff's first claim exclusively under 28 U.S.C. § 1915(e)(2)(B).

Although a court generally cannot raise a statute of limitations argument *sua sponte* because a statute of limitations argument is an affirmative defense, an exception to the general rule exists within the context of 28 U.S.C. § 1915(e)(2)(B) review. *See Barkley v. Maryland*, 615 F. App'x 182, 182 (4th Cir. 2015) (citing *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 656 (4th Cir. 2006)). When Congress has not provided a specific statute of limitations period, a district court adopts the limitation period as defined by the forum state's law. *Johnson v. Davis*, 582 F.2d 1316, 1318 (4th Cir. 1978); *see also* 42 U.S.C. § 1988. Section 1983 of Title 42 is one of the statutes for which Congress has "fail[ed] to provide a specific statute of limitations." *Owens v. Okure*, 488 U.S. 235, 239 (1989). "The statute of limitations for § 1983 claims in North Carolina is three years." *Morley v. N. Carolina Dep't of Health & Human Servs./Broughton Hosp.*, 171 F. Supp. 2d 585, 592 (W.D.N.C. 2001); *see also* N.C. Gen. Stat. § 1-52. The statute of limitations begins to run when the cause of action accrues, which is when the Plaintiff knew or had reason to know of the injury. *Morley*, 171 F. Supp. 2d at 592. "Although the accrual date of a cause of action is a factual inquiry typically reserved for a jury, the district court may resolve that inquiry itself if the facts presented provide a clear basis for such a determination." *Id.* (quoting *Wood v. Commonwealth of Virginia*, 155 F.3d 564 (1998) (citing *Brown v. Am. Broad. Co., Inc.*, 704 F.2d 1296, 1304 (4th Cir. 1983))).

In his complaint, Plaintiff alleges, relative to his first claim, that "[t]he timing of the majority of these actions occurred in 2012 during the last Gubernatorial election process." (Doc. 1 at 5). Furthermore, Plaintiff's Complaint does not contain any allegations of post-2012 conduct, or inaction, relative to Plaintiff's first claim. *See id.* at 2-5. Accordingly, since Plaintiff alleged the harm occurred in 2012 and he makes no allegations about conduct subsequent to 2012, his cause of action accrued no later than 2012. Since Plaintiff's allegations show that more than three

years elapsed from the time Plaintiff knew of the alleged harm in 2012 and Plaintiff's filing of his complaint in November 2016, Plaintiff's first claim for relief is barred by the statute of limitations. N.C. Gen. Stat. § 1-52*; see also Morley*, 171 F. Supp. 2d at 592 (dismissing § 1983 claim as untimely where more than three years elapsed between accrual of claim and filing of complaint).

Accordingly, because on the expiration of the statute of limitations and because Plaintiff's first claim for relief, similar to the second claim for relief, fails to state a constitutional violation for purposes of § 1983, Plaintiff's first claim for relief is properly subject to dismissal without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).[10] The monetary relief aspect of Plaintiff's first claim for relief is also subject to dismissal without prejudice under 28 U.S.C. § 1915(e)(2)(B)(iii) based on the same principles of sovereign immunity that barred the monetary relief aspect of Plaintiff's second claim for relief.[11]

D.     Claims Raised on behalf of Vets-Help

To the extent Northacker seeks to raise his two claims on behalf of Vets-Help, the claims suffer from an additional defect attributable to Northacker's *pro se* status. "Whether a corporate party may proceed *pro se* is a procedural inquiry governed by federal law and the rules of the court." *Gilley v. Shoffner*, 345 F. Supp. 2d 563, 566 (M.D.N.C. 2004). It has been long-established "that a corporation may appear in federal courts only through licensed counsel." *Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201–02 (1993) (citing *Osborn v.*

---

[10] Even though the deficiencies in Plaintiff's first claim for relief do not appear curable, the dismissal is without prejudice because this Court's review is limited to review under 28 U.S.C. § 1915(e)(2)(B) where Defendant did not acknowledge Plaintiff's first claim for relief.

[11] This Court observes that the United States Court of Appeals for the Fourth Circuit has ruled that a dismissal of a frivolous or malicious claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) should be a dismissal without prejudice rather than a dismissal with prejudice. *Nagy v. FMC Butner*, 376 F.3d 252, 258 (4th Cir. 2004) ("We do not think, however, that Congress intended a dismissal under § 1915(e)(2)(B)(i) of the in forma pauperis statute to operate as a dismissal with prejudice."). To the extent a claim dismissed pursuant to § 1915(e)(2)(B)(i) must be dismissed without prejudice despite the fact that no amendment can cure a truly frivolous or malicious claim, it follows that a dismissal under § 1915(e)(2)(B)(iii) must also be without prejudice even though no amendment to the claim can overcome the bar on monetary damages against state officials in their official capacity imposed by the doctrine of sovereign immunity.

*President Bank of United States*, 9 Wheat. 738 (1824) (other citations omitted)). Here, Plaintiff presents himself as a *pro se* litigant electing to represent himself and Vets-Help, an entity his Complaint identifies as a corporate entity. Plaintiff's *pro se* status prevents him from bringing and prosecuting claims on behalf of Vets-Help. *See Rowland*, 506 U.S. at 201-02.

## III. DECRETAL

**IT IS, THEREFORE, ORDERED THAT:**

(1)     Defendant Stein's Motion to Dismiss (Doc. 5) is **GRANTED**;

(2)     Plaintiff's first claim alleging a First Amendment violation based on Cooper's failure to pursue charges against Plaintiff's business partner is **DISMISSED WITHOUT PREJUDICE**;

(3)     Plaintiff's second claim alleging a First Amendment violation based on Cooper's failure to pursue an action against the bank following Plaintiff's attempted purchase of Rockingham Speedway is **DISMISSED WITH PREJDUICE**;

(4)     The Clerk is **DIRECTED** to remove this case from the Court's docket.

Signed: July 28, 2017

Richard L. Voorhees
United States District Judge